**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1853
_____

ANDRZEJ PTASZNIK,

<u>Appellant</u>

v.

UNIVERSITY OF PENNSYLVANIA
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-10-cv-03941)
District Judge: Hon. Ronald J. Buckwalter
_____

Argued April 18, 2013

BEFORE: AMBRO, HARDIMAN and COWEN,  <u>Circuit Judges</u>

(Filed: April 29, 2013)

James A. Bell, IV, Esq. (Argued)
Bell & Bell
1617 John F. Kennedy Boulevard
Suite 1020, One Penn Center
Philadelphia, PA 19103

        Counsel for Appellant

Janice G. Dubler, Esq.
Montgomery, McCracken, Walker & Rhoads
457 Haddonfield Road

Liberty View, 6th Floor, Suite 600
Cherry Hill, NJ 08002

John M. Myers, Esq. (Argued)
Montgomery, McCracken, Walker & Rhoads
123 South Broad Street
28th Floor
Philadelphia, PA 19109

      Counsel for Appellee

————————

OPINION

————————

COWEN, <u>Circuit Judge</u>.

Appellant Andrzej Ptasznik appeals from the District Court's order granting summary judgment and dismissing his Complaint, which alleges that Appellee University of Pennsylvania ("Penn") discriminated against him on the basis of age and retaliated against him for complaining of age discrimination. We will affirm.

I.

We write exclusively for the parties who are familiar with the factual context and legal history of this case. Therefore, we set forth only the facts that are necessary for our analysis.

In 2000, Penn offered Ptasznik the position of Research Assistant Professor of Medicine in the School of Medicine's Hematology/Oncology Division. As a member of the research faculty, Ptasznik's salary was derived from the funds of Dr. Alan Gewirtz, Ptasznik's faculty mentor. Ptasznik's initial appointment was for a three-year term. At

the end of the term, Ptasznik was reappointed for another three-year term, or for the duration of the grant or contract which supports his work, whichever is shorter.

In 2004—during this second term—Ptasznik obtained an R01 grant from the National Institute of Health, and sought his own lab space, independent of Gewirtz's space in order to conduct work related to the grant. Ptasznik says that he was told by Dr. Stephen Emerson—the Chief of the Division of Hematology/Oncology at the time—that he would not get the space because "we have a younger faculty to take care of here at U. Penn." (App. 417.) Ptasznik also claims that Emerson told him at a meeting a few months later that he could not transfer to the Department of Pathology because the Vice Chairman of the Department, Dr. Marc Greene, "also has younger faculty to take care of."[1] (App. 417.)

In 2005, Ptasznik's relationship with Gewirtz deteriorated. During the course of their dispute, Ptasznik worked with Dr. David Pope, Penn's Ombudsman, whose role was to help individuals find solutions to problems that they might not be able to resolve within the normal channels. Ptasznik asserts that during his meetings with Pope, he raised the issue of age discrimination. At this time, Ptasznik asserts that he also complained about age discrimination to Penn's Director of Faculty Affairs, Victoria Mulhern. Ultimately, Penn arranged for Ptasznik to work with Dr. Ron Collman. Collman told Ptasznik that he would be able to provide laboratory space—which belonged to the Center for AIDS

---

[1] Ptasznik also asserts that in 2000 or 2001, Gewirtz told him that Emerson "likes to promote young people." (App. 468.)

Research and Infectious Disease Division—for approximately two years, until June 30, 2007.

In March 2006, Ptasznik was appointed to a two year term, which coincided with his grant, which was set to expire in 2008. In February 2007, Emerson left Penn to take a position at another university. He was replaced by Dr. Joel Bennett. On September 5, 2007, Bennett wrote a letter to Ptasznik stating: "This letter is to remind you of our previous agreement. Your appointment as Research Assistant Professor will end on May 20, 2008 upon expiration of your R01 grant. Your appointment will not be renewed beyond that date." (App. 1143.) Dr. Richard Shannon, the Chairman of the Department of Medicine, also wrote Ptasznik a letter, stating that Ptasznik's employment was to be terminated due to a lack of space, irrespective of his ability to obtain additional grants. Ptasznik's last day at Penn was April 30, 2008, the day that his grant funding expired.

Ptasznik filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). Thereafter, he filed a Complaint in the District Court. The District Court granted Penn's motion for summary judgment in its entirety. *See Ptasznik v. Univ. of Pa.*, No. 10-cv-3941, 2012 WL 699455 (E.D. Pa. Feb. 29, 2012). This appeal followed.[2]

II.

---

[2] The District Court had jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(4), and 1367. We exercise jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. Our review of a grant of summary judgment is plenary. *See United States ex rel. Quinn v. Omnicare Inc.*, 382 F.3d 432, 436 (3d Cir. 2004). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Ptasznik argues that the District Court committed two errors when it dismissed his claim for age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*[3] First, he argues that the District Court improperly found that he did not assert direct evidence of age discrimination, and instead found that the evidence was circumstantial, which caused it to erroneously apply the *McDonnell Douglas* burden-shifting framework, the applicable framework when evidence of discrimination is circumstantial. Second, Ptasznik argues that, to the extent that *McDonnell Douglas* is applicable, the District Court improperly found that he did not make a prima facie case when it held that he was unable to show that his replacement was sufficiently younger to permit a reasonable inference of age discrimination. Both of these arguments are unpersuasive.

The ADEA "prohibits age discrimination in employment decisions against persons who are at least 40 years of age." *Kelly v. Drexel Univ.*, 94 F.3d 102, 104 (3d Cir. 1996). To prevail on an ADEA claim, "a plaintiff must show that his or her age 'actually motivated' and 'had a determinative influence on' the employer's decision to fire him or her." *Fakete v. Aetna, Inc.*, 308 F.3d 335, 337 (3d Cir. 2002). A plaintiff can meet this burden by "presenting direct evidence of discrimination" or "presenting indirect evidence of discrimination that satisfies the familiar three-step framework of *McDonnell Douglas*."

---

[3] Ptasznik also filed a claim under the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. C.S. § 951 *et seq.* The analysis of Ptaznik's ADEA claim applies equally to the PHRA claim. *See Kautz v. Met-Pro Corp.*, 412 F.3d 463, 466 n.1 (3d Cir. 2005) ("The same legal standard applies to both the ADEA and PHRA and therefore it is proper to address them collectively.").

*Id.* at 337-38. Ptasznik asserts that Emerson's comments in 2005 are direct evidence of discrimination. We disagree. As the District Court held: (a) these comments were allegedly made several years before the termination decision was made; (b) Emerson was not a decision-maker in the termination decision, as he left his position at Penn in February 2007; and (c) Ptasznik was reappointed after the comments were allegedly made. The District Court properly found that the evidence of discrimination was circumstantial, and it was proper for the District Court to apply the *McDonnell Douglas* burden-shifting test.

Ptasznik next argues that the District Court improperly applied the fourth element of the *McDonnell Douglas* test. To establish a prima facie claim under the ADEA, a plaintiff must demonstrate the following: "(1) he is over forty, (2) he is qualified for the position in question, (3) he suffered from an adverse employment decision, and (4) his replacement was sufficiently younger to permit a reasonable inference of age discrimination." *Hill v. Borough of Kutztown*, 455 F.3d 225, 247 (3d Cir. 2006). The District Court found that Ptasznik was able to survive summary judgment on the first three elements, but was unable to demonstrate that his replacement was sufficiently younger to permit a reasonable inference of age discrimination. Ptasznik argues that the District Court erred because he was replaced by employees that are younger than him.

The District Court correctly found that Ptasznik could not demonstrate the fourth element. He argues that he was replaced by a younger woman, Susan Shetzline, in Gewirtz's laboratory. But to the extent that Shetzline replaced Ptasznik, she replaced him

6

in Gewirtz's laboratory in 2005, not when Ptasznik was terminated in 2008. The District Court also properly found that Ptasznik was not replaced by Dr. Noor-e-Mobeen Malik. Malik was hired by Collman in 2006 and worked closely with Ptasznik in Collman's laboratory. While Malik continued to work on projects that she had previously worked on with Ptasznik, the evidence in the record does not support Ptasznik's argument that Malik replaced him. Finally, the District Court properly found that Ptasznik was not replaced by four research assistant professors who were hired after Ptasznik's termination. None of the research assistant professors that Ptasznik claims replaced him were hired in the Hematology/Oncology Division. The District Court properly found that Ptasznik was unable to demonstrate this element of the prima facie case.

## III.

Ptasznik also argues that the District Court erred in granting the motion for summary judgment on his retaliation claim. To establish a claim for retaliation under the ADEA, a plaintiff must show that "(1) she was engaged in protected activities; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action." *Glanzman v. Metro. Mgmt. Corp.*, 391 F.3d 506, 515-16 (3d Cir. 2004). Ptasznik alleges that he was terminated in retaliation for the complaints that he made pertaining to age discrimination. The District Court found that Ptasznik was unable to show a causal link between his termination and his participation in the protected activity of complaining about age discrimination.

7

Ptasznik claims that he complained about age discrimination to Pope and Mulhern in 2005. The District Court held that these complaints do not establish causation because Bennett and Shannon were the individuals that made the decision to terminate Ptasznik, and there is nothing to indicate that they were aware of Ptasznik's complaints. We conclude that there is nothing in the record to indicate that Bennett and Shannon were aware of Ptasznik's complaints, and nothing to indicate that Pope or Mulhern was involved with or influenced the termination decision. In addition, Ptasznik actually received a new two-year contract in 2006, after he complained to Pope and Mulhern. The District Court properly granted summary judgment on Ptasznik's retaliation claim.

IV.

Finally, Ptasznik contends that the District Court erred in granting the motion to dismiss his disparate impact claim when it found that he failed to exhaust his administrative remedies. "[A] judicial complaint under the ADEA will be dismissed for failure to exhaust administrative remedies if a supporting EEOC charge was not filed within 180 or 300 days (depending on state law) of notification to the employee of the adverse employment action." *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 382 (3d Cir. 2007). "[T]he parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Webb v. City of Philadelphia*, 562 F.3d 256, 263 (3d Cir. 2009) (quoting *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398-99 (3d Cir. 1976)).

8

In his disparate impact claim, Ptasznik alleges Penn's "practices and/or policies had a disparate impact upon employees over the age of 40." (Compl. ¶ 47.) The District Court reviewed the Statement of Particulars that Ptasznik submitted to the EEOC as part of his Charge of Discrimination. It found that the Statement of Particulars discussed Penn's actions "only in so far as they affected" Ptasznik and noted that "there is no reference to allegations of other similarly-situated employees being harmed by facially-neutral policies." *Ptasznik*, 2012 WL 699455, at *10. We agree with this analysis. Ptasznik did not raise a disparate impact allegation before the EEOC. The District Court properly granted summary judgment on Ptasznik's disparate impact claim for failure to exhaust administrative remedies.

V.

For the foregoing reasons, we will affirm the order of the District Court.